Good to be here and first of all, may it please the court and thank you for expediting the case. We very much appreciate that. I'm going to begin with a quote from the government's brief, page 10. The government did not argue that Officer Brown frisked or opened the bag on the day of the murder.  Which I think helps to explain where Judge Graham went so wrong. Where do the best and smartest judges go wrong? It's when they depart from what the parties have argued and they issue spots. They're so smart and they see it and what happened here was that Judge Graham identified a hypothetical future risk based on hypothetical questioning by the police had it occurred. He then posed a rhetorical question and then answered that rhetorical question. And this is at page 241 of the record extract. He posits after going through some hypothetical questioning how it might have gone. If it gave the police no probable cause, quote, at that point, they had to let him go. They're going to give him back his satchel and walk away when it may have had guns or other activity. They can't open it up and look and make sure. And then he answers it, of course not. Now, this skipped some steps. There are three things the police could have done at that moment after my client was handcuffed and facedown. The handcuffs had clicked and Officer Brown was there as they clicked before he went down or as he was going down and searched the bag. You're speaking specifically to what? This is going down for the bag. Yes. So what are the three things they could have done? I want to make sure. Yeah. Used to be somewhat important. He has the bag. Everything leads up. See, it's pretextual. It looks like it's pretextual in terms of what he's stopping him at all. But he has his bag and he flings it. And it's in, as I'm saying, it's in bushes away from him. Yes. It's not like in the case we had where it was next to him to make sure he couldn't get to it. But it looks like he's abandoned the bag. If you'd like me to, actually, let me, I will get to abandonment. I will circle back to some of that. How far did he throw the bag, 40 feet? What's that? How far did he throw the bag? The government estimates that it was 40 feet, a significant toss. Something in there like that. So I have. Off of a porch or something. Is it important whether he abandoned that bag or not? Well, it is. If he abandoned it, what does that mean for your case? If it's absolutely abandoned, what does that mean? I have three reasons why it was not abandoned and why it does not change. My question is, if it was abandoned, then what does that do to your case? If it was abandoned, it is not abandonment if it was the result of an unlawful stop in the first place. There are several cases. If it is the product of that. Now, on abandonment, well, whatever the government has to say about this court's test for abandonment, set forth in the small case and the Ferebee case, whatever my friend at the bar says will be the first thing any court or I has ever heard of it. Because the government has never tried to meet that standard. And they have cited only Hodari v. which does not address abandonment or standing. Those words don't appear in the opinion. Judge Graham didn't rule on abandonment. He did not. He expressly did not. But you all briefed about it. Well, we briefed it, but let's back out here for a moment. Now, we usually, well, we're supposed to be a court of review. Yeah. Instead of first view. Exactly. So, how would that apply to an abandonment point? How that would apply, Your Honor, is that the worst case scenario for my client should be a remand for Judge Boardman to make first layer findings on this. Abandonment just jumps off the page. Why couldn't we go ahead and decide? Oh, there are, well, you can decide it in my favor. We threw it 40 feet away and got rid of it. So, if there's one thing I'm good at, Your Honors, it's searching Westlaw on a very tight schedule. Well, I want to correct you there because Hodari does use the word abandon. Okay, it does use, I'm sorry, but the phrasing of the, you're correct, and that is why it is sometimes miscited for that point. But Hodari v. says the narrow question before this court. And it is a question of whether an arrest had occurred at that moment. That is the only question before the Supreme Court of the United States. I wanted to clarify before you started waxing eloquent about your Westlaw skills. Reading the case, the court multiple times says he abandoned the crack, he abandoned the crack. Because he abandoned the crack, the case is over. Well, you know, it's remembering what I've seen. But let me tell you what my Westlaw has done, which is I have searched the country. You don't have standing to complain, do you? What's that? You don't have standing to complain if he abandoned it. Your Honor, there is not one appellate authority from any federal court in this country in which the abandonment occurred after the police said drop the bag. The abandonment, the purported abandonment here happened after the police said drop the bag. Now before he abandoned it, he ran, didn't he? He did. And that's the best evidence in the world that somebody has done something wrong. No, it's not, Your Honor. I mean, we've got Supreme Court cases and our own cases. Flight is wonderful evidence for the prosecutor. Your Honor, in a high crime area. So the case, Alberti back in 1896 is when the Supreme Court first recognized that flight doesn't mean guilt. And that was a case involving a freed slave in an opinion written by the same judge, justice who wrote Plessy v. Ferguson. This is something where flight from the police does not equal guilt. The exception that was found was Illinois v. Wardlaw, which is four high crime areas. It's flight. They rob the bank and they get it by car and take off. Well, yes. It's guilt. This isn't flight from a scene of a crime, Your Honor. This isn't flight from where the shooting was. This was two weeks later. Flight is not flight, Your Honor, under the case law. Flight from the scene. This is not flight from the scene, Your Honor. So allow me to say, all right, so the police said drop it. And the district court made a finding that he didn't comply. The district court said that the police said drop it. And I find, as a matter of fact, he did not comply with that order ever. Instead, he flung the bag. Your Honor, Judge Grimm found that for purposes of whether an arrest had occurred at that point in time. And when it came time to decide abandonment, Judge Grimm demurred on that point. Let me tell you something else. He didn't make a finding on, he didn't reach the bottom line on abandonment. But he made lots of findings about at no time did the defendant comply with the commands to stop or to drop the bag. And that's a question as to whether we can make the abandonment conclusion ourselves or not. You cannot, Your Honor. Under small and fair, I do not believe you can make that call in the first place. Let me tell you, I think that is... But I want to make one clarification. You mentioned it was not a high-crime area. Maybe that's, I know that's been considered, but I maintain in many opinions, people who live in high-crime areas are not second-class citizens. Simply because they're running in an area there, that doesn't give them the basis for stopping or doing anything else to it. So, going back to Judge King's proposition, or at least his statement, that it is the flight that's important here. And then he flings, flings, or whatever, this bag, you're attaching significance to the fact that the officer said drop the bag. But if the officer says nothing, and he just flings it, isn't that abandonment? If the officer had not said drop the bag, I would have a tougher argument to make. And so, okay, now help me with that one. What does that do about drop the bag, which would comply with our case to say that if a defendant pushes a bag away from himself, but it's right there within his reach, but when he gets away, so he lets you know it's not a threat. Yeah. It reduces the threat to the officer by saying drop the bag. Correct. As long as he has that bag, he could have a gun in it, which he did here, but that's not relevant to where we're going right now. Or he could do other things with it. Once he divorces himself from that bag, you don't have that safety of the officer situation. Correct. But he didn't do that. He threw it over, I don't know how far it was, Judge King says 40 feet. Judge Wynn and actually Judge Rushing, let me tell. He flung it over the banister or over the railing. All right. So allow me. He was trying to throw it into the brush where they couldn't find it. That's in the records. That was not a finding that Judge Grimm made here. I think Judge Grimm actually brought that up. Well, he expressly made no abandonment finding while he was working on an opinion on standing. So let me tell you something else that Judge Grimm found. And I think this goes more towards what you're discussing, which is that Joint Appendix 241. 241. 241. That's important. Page here, 241. 241. We're on 241. Okay. On page 241, I'm going to find the exact line. I do not have a photographic memory. This is part of Judge Grimm's other findings, and I think this helps explain why there was not a finding for purposes of small inferiority. That even if we assume it was noncompliant, that this means this was an intentional relinquishment, which is not to be inferred likely. One of the reasons that Judge Grimm gave as part of his what else were the police supposed to do, he said, let's suppose. And mind you, this is on a different topic, but he says, you know, let's say there wasn't a bag there. And they said, why did you run from us? What's going on? And he said, well, I was afraid. You know, I'm afraid of police. I don't feel safe around them. That was a perfectly logical thing to say. Now, another, by that same token, you know, so he recognizes that being generally afraid of the police, and he actually found, citing the Alberti case from 1996, that flight from the police alone is not reasonable suspicion. Now, what if the answer had been, I threw the bag because I was afraid that if it was in arm's reach, you would have tased me. That's my concern. Is that on 241? On 241. What I'm quoting is what Judge Grimm found. This is on line 8. This is line 8. So this is in a different context, but it, I think, helps explain why Judge Grimm did not make a finding on it. All right. He said, and they said, let's assume, that actually begins on page 7. Let's assume hypothetically. If the police had said, why did you do that? Why did you run from us? What's going on? And he said, well, I was afraid. You know, I'm afraid of police. I don't feel safe around them. That would have been a perfectly logical thing to say. Now, by that same token, it would have been a perfectly logical thing to say. Had they known, if they had asked, well, we saw the bag. Why did you throw it? A logical thing could have been was, I wanted to get it out of arm's reach as far away as I could so that I wouldn't be tased. You were threatening to tase me. And I know I wasn't complying with what you said, but for me, the safest possible thing was to get this as far away from me as I possibly could. And that, now, that question was never done because the police never asked my client the Terry questioning. They said they wanted to ask of him because they searched and then arrested. But what I'm saying is that another inference that could have been made from the circumstance was, even if it wasn't compliant, even if it wasn't compliant, it was still not an intentional relinquishment because they had said, we see your bag. And when they said drop it, the only inference is that they have decided that there's a gun in this bag and that the safest thing for him to do under the circumstances, even if it means not complying, is to get the bag as far away from him as he possibly can before going face down. Did the trial judge make a finding that he threw it to hide it? What's that? Did the trial judge make a finding that he threw it to hide it? Did he make a finding that he threw it to hide it? I will scour the transcript while I'm waiting for rebuttal, and I will have further things to say about that. I think that's 224. 224, thank you. He flung it in an effort to get rid of it, is what the court said. He threw it 40 feet, and they went down there and found a gun in it. Did they have probable cause to arrest him at that point? I see. So are you asking me the question, did they have probable cause? When they found the gun in it, they told him to put it down. He threw it away. They went down and found a gun in it. Did they have probable cause at that point? Probable cause. Probable cause. To arrest him. I do not know the answer to that question, Your Honor, but let me focus on, and I realize that you may not like me saying that, but allow me to say, if that were the case, what they could have done was to search the bag, to seek a warrant to search the bag. Did that give probable cause? Judge Grimm found that that was not probable cause. I believe he found that was not probable cause at that point. I'm asking you what you think. If that's the finding, I'm not challenging that finding, Your Honor. So let's assume it was to hide it. Now, to hide it can mean different things under the circumstances when the police have said, drop it or I'll tase you. If it's to hide it, get out of the way, all right. But all it is to say, I want this out of arm's reach. This was precipitated by the police, their commands. They created this exigency. Now, we still prevail even if, all right, there's no harm in remanding for factual findings on that point. And I would not see a reason, Your Honor, to exercise discretion to decide it and to depart from what this court found in Small, which is this is a first layer. Well, and Judge Boardman is a very, very smart person, too, and like Judge Grimm, smarter than me and better able to go through these videos. I mean, the reason we're deferring to trial judges is because they see a lot more of these videos than we do. Can I ask you a clarifying question? Yes. From your briefs, the search you're challenging is opening the bag. Correct. Okay. You're not challenging us as a search, an unconstitutional search, touching the bag. Touching the bag. Oh. Your briefs just talk about opening the bag. This is not an argument the government has ever made. Before you frisk, the frisk would still have to be related to officer safety, and they disclaimed an officer safety question. I've never argued that the unconstitutional search was when the officer Brown picked up the bag that had been thrown into the bushes or the apartment courtyard, whatever it was. It's just the opening of it. No, I think it is, in general, the search of the bag. It's all part of searching the bag, Your Honor. Well, I'm asking you, what did you actually say? I thought just your briefs, I think, focus exclusively on opening the bag. And I apologize for any lack of clarity in phrasing, but this is part of searching the bag. What is? Frisking. Picking it up? Picking it up. Feeling for a gun. They had to leave it in the courtyard. Okay, here are the things that they could have done. Before he opened the bag, he felt the outside of the bag and felt the gun in it. Your Honor, this is not an argument the government has ever made. I want to know what argument you made. I want to—when the government did not argue, the government expressly did not argue this was because of officer safety, and they argued only the abandonment issue in the trial court. I'm just trying—I didn't try to bring up a contentious point. Oh, I'm sorry. I'm so sorry, Your Honor. I thought this was a point of clarification where in the district court, the defendant is the one who moves to suppress evidence. Yeah. And the defendant files a motion to suppress and says you should suppress because the Constitution has been violated in this way. And I thought the way that you said the Constitution had been violated was that the officers opened up the bag and unconstitutionally searched it. Is that right? Or was the argument instead the officers unconstitutionally searched the bag when they—when Officer Brown picked it up? The argument is both, Your Honor. And I deeply apologize. Can you just point me to the record? That would not have been a point. I think the general point was, and I will find the motion while I sit down, I'm not—because the government has never argued that, I did not focus on that point in preparing for this argument. Take a look at Buster. Buster— And that's a case where they felt the gun outside of the courthouse. Yeah, correct. That's exactly right, Your Honor, Buster. I want to say I am so far over here. I've never even gotten into whether this was—there's reasonable suspicion in the first place, and I must therefore rest on the briefs on that. Well, you've faced some time for rebuttal. Okay. And we've given you some extra time for your argument. Okay. All right, well, do you want me to address that now? Generally, when you come up here, you respond to questions. Yeah. That's the way it works. Absolutely, Your Honor. Have a seat, Jeremy. All right. Well, thank you very much. And then you get another chance. May it please the Court, Your Honor. Adam Ake for the United States. I represent the District of Maryland, USA. Good to have you with us. Good to see you again, Your Honor. Your Honor, the government would ask that this court, under its authority given to it by itself, in U.S. v. Smith, which is a Fourth Circuit case from 2005, 395 F3rd F16, this court has previously ruled that it may affirm a district court in a criminal case on any ground apparent from the record. And in this case, Your Honor, and as the government has argued from the beginning of the procedural history of this case, this bag search was not a Fourth Amendment violation because the defendant had already forfeited his right or any expectation of privacy in the contents of the bag. Before he submitted to police authority during this chase, he volitionally threw the bag well over 40 feet. I've walked the ground measuring it out on Google Maps based on where it's about 45 feet, Your Honor. Forty-five feet. Forty-five feet from where he was standing on the second floor landing of that open-air apartment stairwell. And then on the video, you can see exactly where it hits. There's paved pathways. It goes beyond the intersection of paved pathways, so it provides a very recognizable landmark. And Judge Grimm found as factual matters. If we look at the facts here, facts are you have an individual, they ask you to stop. I take it that point, there's nothing they have attached. There's a criminal activity afoot at that time. But they're stopping him, and they want to stop him in this instance because the crime they're looking at is previous. And then he, they tell him to drop the bag, and he throws the bag out of his reach. And the trial judge doesn't make a direct finding. He says it's an underhand throw, swings out, and throws it in bushes, which means he's abandoned. Doesn't mean, but you know when you think of abandonment, he might have thrown it in bushes, but he knew where he threw that bag. So it may have been, I don't know if you call it abandonment, didn't mean he couldn't go get his bag. He could have gone and gotten that bag, and the trial judge didn't make a determination that he in fact abandoned it. He just said he threw it into the bushes, and then made the, I guess you could make the inference. And really that's really not much in terms of what's being argued on the abandonment of it. So that makes the case a little muddled. I mean, I think, because that's a pretty important fact, I think, as to whether that bag was abandoned. Oh, yes, Your Honor, I agree, but I'll point the court, and Judge Rushing can already look to it. But it argued abandonment, didn't you? To Judge Grim, you argued abandonment. And we enlisted testimony only based on abandonment. But Judge Grim declined to reach him. Your Honor, what I believe happened here was that the other defendant, by the time he was apprehended, still had his bag on him. So at that point, that was... It was his bag. The other defendant was... Moore? Thank you, thank you. It was Mr. Moore. So Mr. Moore, they had split up, or as soon as one dropped from the platform and the railing and the other one crawled back over the railing, Mr. Moore continued to flee. When he was found with the exact same bag, he had it on him. And so that had to be analyzed as a Terry stop and frisk. You know what we're calling them in some of the papers? Satchels. They called them satchels. These nylon bags that they wore strapped across their chests. Both of them... But they had very similar appearance, and both were very light bags otherwise. And that goes to kind of an inevitability argument that we probably would have proceeded on, or we would have elicited argument on had we been arguing anything besides abandonment in the case of Mr. Frazier's bag search. Were they on their back, or were they on their... So it was carried. It's a strap. It comes across. It cuts across, and then they're wearing it somewhere on the side. Kind of like a purse, Your Honor. The gun would be readily available. Right. And the testimony that Officer Brown offered during the suppression hearing was that when he encounters these, it's frequently there's contraband inside, and his understanding is people wear it because it makes it easier to drop and throw it from themselves. And Judge Grimm did make an express finding on the purpose of the throw because he said it was not until, and this is a Joint Appendix 223 crossing in 224, it was not until Mr. Frazier threw the gun off into the woods or to the bushes that separate the apartment complex in an effort to get rid of it that was not complying with the order. So Judge Grimm found that at no point had he complied with officer directions or submitted to police authority, which puts it into the realm of California v. Hidari D. So he had still not been seized under the Fourth Amendment up until that point. When he threw this volitional throwing of the bag with a purpose to get rid of it, and he threw it a long distance. And so in terms of abandonment under the Fourth Circuit's tests, under small, you just have to show that it was volitional, it wasn't accidental, and Judge Grimm found that it was volitional. And then under Farrabee, there's an additional element of is the defendant disclaiming ownership in it. And here we have a voluntary statement by the defendant that certainly goes to his intent. It's after he throws it, but he says, you know, why did you stop me? And Officer Jacobs just responded to the defendant's question. He says, because you had a gun in your bag. And immediately after, the defendant says, oh, it's not mine. So I think that certainly points to the intent. Yes, Your Honor. The court's finding that he threw it to get rid of it. Yes, Your Honor. Does that take us all the way on abandonment? Because, you know, we've said people leave things behind that they might intend to come back to get. You know, abandonment is more than just I walked away from it. It's I intend to disclaim it, right? Abandonment is, you know, the statement you acknowledge we can't consider the statement that it's not mine. But that's what abandonment means is it's not mine. I don't claim it. And does the fact that he threw it to get rid of it take us all the way on, hey, this bag's not even mine. I don't want anything to do with it. You know, I'm not claiming it. When he has a co-defendant who's running away somewhere down there, he's close enough that, you know, if they let him go, maybe he could go retrieve it. I mean, he's just hoping he throws it so the officers won't find it. I'm not sure why the court can't consider his statement afterwards because it certainly goes to his intent. So you're saying we can consider that because the officers hadn't yet touched the bag? No, I'm saying that he, one, it was a blurt because it wasn't subject. The officer didn't question him. He actually questions the officer. He says, why'd you stop me? Or what'd I do? That happened after the search, right? We have to look at was it abandoned when they searched it? Yes, Your Honor. So, I mean, right, that Jacobs had already called it out. But I'm just saying we can infer his intent not only from the throwing, but in this case then he supplements that after the fact in terms of our understanding of his actions. His intent to do what? His intent to get rid of it, to dissociate himself from the bag and its contents. Why? Because the officer says he was stopping him because he had a gun in the bag. And so you're connecting the gun in the bag is the reason he threw it? Your Honor, I'm just saying that the statement, so Mr. Frazier, as he's being handcuffed, said, what'd I do? Yes. And Officer Jacobs said, you had a gun in your bag. And then his response, and Frazier says this, it's not mine. But at that point he had already taken the gun out of the bag. Officer Brown had already found it in the bag and closed the bag back up. That's right. And went off with it. But my question on that, because I think this is critical. Yes, Your Honor. The gun is in the bag. What's illegal about that? It's a concealed weapon at that point, Your Honor. And permitted in this state? In Maryland, you'd have to have a permit to carry a concealed weapon. And we have cases that indicate that unless you can show they don't have that, that doesn't give you probable cause. I mean, you don't get to go and search someone in a state where concealed weapons are permitted. You don't just search them just because they've got a concealed weapon in a circumstance out in the public like that, do you? Or can you? Your Honor, I'm not. In other words, it's illegal unless you establish that it is legal to do so? Your Honor, I'm just saying at that point, as soon as they ran his identity, he also fell into possession. In which individuals have had guns on them. And we've said, and other courts have said, if the state says you can carry a concealed weapon, I mean, there's a method by which you can carry this weapon. You don't go around and think that people are carrying something illegally, as long as you're doing it legally. So if he has a gun in his bag, the presence of the gun alone, what does that do? Your Honor, are you getting at? I'm only speaking to state law. That's what's required. I mean, when you think of the other cases, there are a number of cases on it which individuals have had guns on them. And I probably would agree, yeah, you should maybe search them. But I'm just telling you, in states in which you have concealed weapon permits allowed, then you don't just go search someone because they've got a gun on them. Without anything else. Your Honor, are you getting at the propriety of what Jacobs responded in terms of what he said about, what did I do? All I'm saying, if there's nothing illegal going on, to say I want to get rid of it or whatever, only says something legal. I want to get rid of a Snickers bar that was in my bag. What would that do? What intent would that show? I'm not sure I understand the court's question. In other words, if there was something legal in his bag, a teddy bear, as opposed to a gun, and the officer comes in and says, I'll stop you because you have a teddy bear in the bag. And he says, yeah, it's not mine, not my teddy bear. What does that, is that the same case as with a gun? Does a gun do something different than a teddy bear? No, Your Honor. I'm just saying that his comment just goes to validate the understanding that Judge Grimm made in his factual finding that he threw the bag with the intent to dissociate the bag and its contents from himself. That's the only important. Disassociate, you said. Disavow. He wanted to separate it from himself. My police officer said they suspected before this that these fellows had guns in those satchels. Strapped on them. That's the reason they were following. Or some contraband, Your Honor. Guns or drugs. They thought they had been around the shooting on 7-11. Yes, Your Honor.  And I recognize, and I'll credit defense point, that that suspicion, the quantum suspicion, was much higher to the co-defendant, Mr. Moore, who met the description of the shooter, or one of the participants in the shooting, and had been seen with a bandage on his upper arm the day after the shooting. So I think that that was all. And they found blood on the ground but didn't find the victim. Correct. When police responded to the shooting on July 11th. Was that evidence of a crime? That it occurred on 7-11? Yes, Your Honor. Pardon? Some crime happened there. So these guys were suspected of a crime, at least, when all this happened with the throwing of the bag. Yes, Your Honor. And that was the reason. At the time they went down there and found the gun in the bag, I'll ask you the same question I asked your colleague up here, did they have probable cause to arrest him? At the time they found the gun. When they found the gun in the bag, did they have probable cause to arrest Mr. Frazier? Your Honor, I think as soon as, I think they had probable cause at least, or they had reasonable suspicion to do a Terry stop at that point. And then after determining. You're not answering my question. Your Honor, they had probable cause to arrest based on those circumstances at that point. I think they had to verify that he did not have a concealed weapons permit. And to find out he was also a prohibited person to have probable cause to charge him with a crime. But to be clear, it wasn't that they reasonably suspected him of that crime earlier. That's why they waited until they said he was jaywalking on a street that had a cul-de-sac in it, right? Well, they didn't attempt to do something until they saw that jaywalking. They didn't have enough to suspect him. Because when did this crime occur? This is like some time before. Two weeks earlier. Two weeks earlier. So they see him. They may subjectively be doing it. Saying, hey, we think they did it. But they had nothing there that reasonably connected him with the crime. But they wanted to check him out. So they waited until he was jaywalking on this street with cars on both sides. And there's a cul-de-sac the whole bit. And then that's when they wanted to stop, right? Your Honor, Mr. Moore acknowledged later he was shot in that event. And it's not clear that he returned fire. I mean, the police just believed that he was at least a victim of the crime and had information about the shooting. And wanted to question him. Now, Officer Brown didn't want to just pull up to him in plain clothes. He had a wound on his shoulder. It turns out it wasn't visible on that day. So he had seen him two weeks earlier with the fresh bandage when he was wearing a tank top. And then on July 25th when he saw him again, it turned out he did still have a bandage on his arm. But it was covered up that day. And that was Moore? That was Moore. We're talking Frazier, Your Honor. So what I'm trying to do is, you asked Judge King's question about the suspicion that he had been involved. You had nothing there connecting to it. It was the jaywalking that got Frazier. If we're looking at, and the government never argued that this was... So it does get it into, you know, the objective standard of reasonable suspicion. I believe that Judge Grimm is right in the sense that you accumulate all the factors that he enumerated. That there was reasonable suspicion to stop Mr. Frazier as well as Mr. Moore. I certainly think the quantum of reasonable suspicion was higher than Mr. Moore. That's just one of the several factors which was amplified. One of the other factors that you would have a suspicion to stop Frazier, who just has a bag, walking in an area. It's the bag, it's the connection to Mr. Moore, and then it's the headlong... But carrying a bag, there's nothing there to give you a suspicion. You're just carrying a bag. In other words, if a citizen is walking around with a bag on, that's not suspicion. I mean, a jaywalking and a bag doesn't do it, does it? So you're right. Again, I don't think that... Our argument is that this is just not a Fourth Amendment search because he never complied and he abandoned the bag. I think that's the focus on this. I mean, if we... He ran from the police. He did. And that's just one of the factors that Judge Grimm found to add to the reasonable suspicion, if it's analyzed to Terry Stott. But I think it's incorrect because we shouldn't even get to the Terry Stott because before... The only thing that's challenged here is the search of the bag. That happens before they submit to... I thought you made your point that he was found jaywalking, so he's committed some offense. Then you can tell him to stop, and he didn't stop, and then you have a flight from it. And when you have the flight from it, I mean, these things build up on it. You see how it's building up on it? All that sounds like it's probably permissible, jaywalking. But when you try to connect it up to something that happened two weeks ago, I'm not following that. Because I don't think you had anything on Frazier from two weeks ago. So when the jaywalking, and I'm assuming the jaywalking is something you can't do or whatever, and they decide to want to stop him, stop. That's all I want to do, stop. But he doesn't stop. He keeps running. He starts running, and in the process of it, unhandedly flings this bag. Then you've got the question of the abandonment kicking in, because it seems like to me you can get it unless you've got an abandonment or something on it. That sounds like to me where your argument was going on. But is there something different? No, you're right.  But I think the cleaner basis is just to take the facts that Judge Grimm found on voluntariness and purposeful throwing of the bag to dissociate it from himself, so intent to abandon, as well as he did so before he submitted to police authority. So it puts it squarely within the ambit of the R.E.D. Because this court can affirm on any grounds that are apparent from the record, even though Judge Grimm didn't make the ultimate application of the law to the facts that he found, the facts are there, and this court can apply the law and simply find that they were abandoned. It doesn't have to weigh in. I think we ought to jettison the proposition that we are a court of review. We need to become a court of first view. We can't do the job for the district court. Your colleague said if you want to do it, you could send it back and get some more facts back. Yes, Your Honor, but in the process of vacating a conviction. And in terms of judicial economy, it makes plenty of sense for this court to simply… Skip the district court, judicial economy. We are supposed to be looking at what's already happened. Yes, Your Honor, and those facts have been found, and it's just a simple matter of applying the law to those facts. Unless the court has any further questions for me, I've gone past my time. Appreciate it very much. Thank you, Your Honor. What I want to focus on is that there are several statements my friend at the bar made that directly conflict with circuit law. They first bring up the post-search statements by my client. As we pointed out in our brief, the small case at page 502, the post-search comment is irrelevant. That is merely poisoning the well, and it's nothing to do with the case. And in terms of the probable… Post-search comment? You're talking about… It's not my gun. If he had said it's not my bag before the search, we're talking a very different world, and it's conflating things. U.S. v. Small, quoting U.S. Supreme Court, a search is good or bad when it starts, period. So that is irrelevant. I'm sorry. You're saying he had already seized the bag, opened the bag. Yeah. Then he made the statement. Correct. Because he said, we found a gun in there. He says, not my gun. So this is in the video. Now, this is part of a… Isn't that part of the race just now? What's that? Isn't that part of the race just now? No, Your Honor. That puts the whole thing in context. No, it doesn't, Your Honor. Okay. Surely under the Supreme Court law quoted by this court in Small, the post-search statements are irrelevant. It is only determined based on the time the search started. Now, there are other things that the government said that directly conflicts with circuit law. Walking with Mr. Moore is not particularized suspicion as to Mr. Frazier. Moore ran and got away. Well… Isn't that right? Well, running away is only in a high-crime area, Your Honor. Huh? Running away is only in a high-crime area. Only. That can't be right. I mean, let's go back to what Dot Wynn said. You have to look at the context. Okay. Running from the police is evidence that you want to get away from the police for some reason. All right. And one of those… It's a high-crime area. And Judge Grimm found… Your Honor, and I apologize. I'm so intense in responding. Page 241 of the joint appendix, Judge Grimm said it would have been a good response and one that would have required them to release him if he had said, I was merely afraid of the police. That's what Judge Grimm found, Your Honor. He found that. The bags known to hold weapons, the point that you were talking about… We're all afraid of the police. What's that? I mean, we're all afraid of the police. At least we get nervous. Your Honor… We all get nervous when they pull us off the road.  So, I'm going to talk to you, Your Honor. So, there's this case, Wilson, where this court held that we don't want police in airports to provoke situations in areas and to hopefully induce people to abandon their property. That's an airport. Well, what about this majority black apartment complex? You had some other points. What's… You had other points. There are other points. So, there are other points on which… The United States v. Curry case, and in particular, Chief Judge Diaz's concurrence in that case, being a prohibited person is not a default status. The default status is Second Amendment rights. Suspicion there's a gun is not suspicion of unlawful possession. But do you agree that once they opened the bag and saw the gun and the marijuana, then they had probable cause to arrest? Correct. Yes. Okay. And then the pretext they're talking about, the jaywalking, let's remember, Hassan L. said it is an objective standard. It is not subjective. The only finding was a subjective, but, you know, he declined to make an affirmative finding that was erroneous, but it was, like, legally erroneous determination that this parking lot was a public walkway. I thought the court said there was nothing in the statute on its face that was inconsistent with what the officers thought it meant. What the judge found was that he didn't see enough from the pictures to make a determination whether this is a public walkway. Yeah. He couldn't definitively rule that it was or wasn't covered, but that reading the statute on its face, it was reasonable for an officer to think that's what it meant. Well, but that is not the analysis under Hassan L. That's not an objective standard? That is not an objective standard. What a reasonable officer would think it means? Now, the objective standard is, like, is their taillight busted out? Did you roll through a stop sign? These are objective facts that it is the purely objective standard to that, Your Honor. And I would say that these happen with cars with diminished expectations of privacy. That's all the case law is. I have been unable to find a single case in which the pretext was jaywalking. Cannot find a single case to that effect. And what the government is doing when it is asking this court to affirm on alternative grounds that weren't found, it wants this court to decide a major question. A major question about abandonment without a first-layer finding. And I would certainly think that the question of, because I did look in 223 to 224, as Your Honor pointed out, and you questioned my friend at the bar, what that is discussing is he did it to get away from him. There was not a finding that it was to hide it or that it was to never come back for it. Because most of the case law is you threw it in an alleyway in a trash can with no intention to come back for it. And so these are items that are nuanced. And what the small case said and Ferebee said, this is not to be lightly inferred. Abandonment is a big issue. And this is something where a trial judge, for the same reason that the government is asking this court to rely on Judge Grimm's findings, yes. But to have a fulsome analysis of this point, if that really is the dispositive point, Your Honors, I would say yes. This is something that would absolutely benefit from a finding. And I still, Your Honors, I still have yet to have an answer from the government to Small and Ferebee. These courts, two decisions about abandonment. It cites a pre-Small decision in which this court affirmed an alternative grounds. But that's not been the case since Small. And if there were a time to exercise that discretion, it would be when there was settled law on a fulsome record with on-point factual findings. And I would further submit that before Buster, you know, Buster helped to crystallize the issues. And I think that if this court were inclined to send it back down, something that would, you know, the issues are crystallized. This is what we're talking about would be of great benefit to the bench and bar. And please do not decide this against my client and say you can find without an affirmative finding by a judge who very well knows what the standard is. You know, please do not do that under this circumstance. I think that at the worst case scenario for my client, it should be a remand so that Judge Boardman, another very smart judge, can make these findings in the first instance. And it just confounds me that the government only says judicial economy and will not even admit of the possibility that it might be worthwhile to send this back down, especially when the government has not cited Small or Ferebee or made arguments under this court's controlling law. Thank you. Thank you. And I notice you are court appointed. I very much am, Your Honor. In these proceedings, and we really appreciate that. We couldn't function without lawyers like you. And we thank you for that. Thank you very much. And again, I apologize for the intensity of my response to some earlier questions. You represent your client. And we appreciate the arguments of counsel. And we'll come down and greet you. And then we'll take up the final case.
judges: Robert B. King, James Andrew Wynn, Allison J. Rushing